IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JENNIFER RICE and
TROY BAKER,

    Plaintiffs,

v.                                                  CIV 00-1669 WJ/DJS-ACE

THE CITY OF SANTA FE, in its official capacity,
and JOHN DENKO, in his individual capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING JOHN DENKO'S MOTION FOR PARTIAL SUMMARY JUDGMENT NO. I: PLAINTIFFS' EQUAL PROTECTION CLAIM

THIS MATTER comes before the Court pursuant to Defendant John Denko's Motion for Summary Judgment No. I: Plaintiffs' Equal Protection Claim [Docket No. 96] and John Denko's Motion to Dismiss Plaintiffs' Equal Protection Claim [Docket No. 90]. Having reviewed the submissions of the parties regarding the Motion for Summary Judgment, the Court finds that Defendant Denko is entitled to summary judgment on the Equal Protection claim on the grounds of qualified immunity. In light of this decision, the motion to dismiss is moot and shall therefore be denied.

**FACTUAL SUMMARY**

Plaintiffs filed a complaint alleging that the City of Santa Fe and Chief of Police John Denko violated their rights under the equal protection clause of the Fourteenth Amendment in

violation of 42 U.S.C. Section 1983. Plaintiffs state in their Response to this motion [Docket No. 109] that the claim is predicated upon unequal application of a government statute or procedure involving intentional discrimination.

Plaintiffs, at the time of the incidents alleged in their complaint, were police officers with the Santa Fe Police Department and were members of the Santa Fe Police Officer's Association, a union representing police officers below the rank of lieutenant within the Department.    In January 1999, Officers Rice and Baker were dispatched to investigate a "suspicious vehicle" based on an anonymous call from a citizen. A van was parked at the end of a walking trail in a Santa Fe neighborhood. A woman was seated in the passenger seat of the van and a man was laying in the back of the van. Officer Rice approached the van and began talking to the occupants. She let them know that a neighbor had called and expressed concern about the van. The occupants of the van explained that they had been walking along the arroyo and had returned to the van to talk. Officer Rice requested identification from the occupants. The male occupant complied. The female occupant refused saying she was doing nothing wrong and would like to be left alone. The female occupant subsequently gave her name, but refused to give a date of birth or social security number.

By this time, Officer Baker arrived at the scene. The officers told the female occupant, now identified as Ms. Warren, that she was required to identify herself and failure to do so could lead to her arrest. Ms. Warren continued to refuse to give a date of birth or social security number. Officers Rice and Baker removed Ms. Warren from the van, handcuffed her, and placed her in a patrol car. Ms. Warren then gave Officers Rice and Baker the information they had requested. She was released after the officers determined there were no wants or warrants for

her. Officers Rice and Baker admit they had no suspicion to believe that Ms. Warren or her companion were involved in any criminal activity at any time before or during this incident.

Ms. Warren signed a "Complaint Regarding a Police Officer" on January 20, 1999 in which she complained about the above incident. Ms. Warren also submitted a "Statement of the Incident" to the Citizen Police Incident Review Board on February 7, 1999. In both complaints, Ms. Warren stated that she wished to mediate her dispute with Officer Baker. On February 4, 1999, Chief Denko assigned Lieutenant Leroy Lucero to conduct an Internal Affairs Investigation into the incident. Lieutenant Lucero was also the commanding officer for both Officers Rice and Baker.

Some time in early 1999 during a staff meeting, Chief Denko referred to the incident involving Ms. Warren and Officers Baker and Rice. His statements were critical of these Officers' conduct and he remarked that he would set an example with these Officers.

Lieutenant Lucero issued an Internal Affairs Investigation Report (IA report) in which he found that Officers Rice and Baker had a lawful purpose in initiating contact with Ms. Warren and her companion. Lieutenant Lucero also found that Ms. Warren was under no legal obligation to identify herself absent a reasonable suspicion by the officers that a criminal offense had occurred, and that an investigative detention of Ms. Warren was not warranted. Lieutenant Lucero found that Officers Rice and Baker failed to adhere to Department Standard Operating Procedures regarding field contacts/ interviews because they did not have, prior to the investigatory detention and subsequent arrest of Ms. Warren, probable cause or reasonable suspicion that Ms. Warren or her companion had committed any type of criminal offense. The Assistant City Attorney Mark Allen reviewed a draft of the IA report.

Chief Denko conducted a predetermination hearing. At the hearing, Officers Rice and Baker contested the findings in the IA report on the basis that they complied with a department standard operating procedure, the "suspicious person/vehicle/activity" procedure which states that "in ALL CASES, all person(s) and/or vehicle shall be checked through NCIC and for any outstanding wants or warrants." Chief Denko sent Officers Rice and Baker a memo on August 2, 1999 explaining why the "suspicious person/vehicle/activity" procedure did not relieve the officers of their obligation to have a reasonable suspicion before making an investigative stop. Specifically, the memo states that the officers had a constitutional obligation of reasonable suspicion, that it is a violation of the U.S. Constitution to require a person to identify herself regardless of the circumstances, and that Fourth Amendment protections are triggered anytime an individual is stopped and told she is not free to leave. Lieutenant Lucero testified in his deposition that Officers Baker and Rice followed the "suspicious person/vehicle/activity" procedure during the incident involving Ms. Warren.

Both officers received written reprimands that were to be kept in their personnel files for a period not to exceed one year. The reprimands were signed by Captain Andrew Leyba who also attached written recommendations for the reprimands. The reprimands were signed as "recommended" by Chief Denko and by the personnel director Leo Griego. Finally, the City Manager signed as "approved" the reprimands. Plaintiffs state that there are material issues of disputed fact with regard to the recommendation and approval of the reprimand. In essence, they argue that Chief Denko was the final decisionmaker with regard to the reprimands. The Court notes that the issue whether Chief Denko was the final decisionmaker with regard to the

reprimands is material to the issue of the liability of the City of Santa Fe, but is not material to the issue whether Chief Denko is entitled to qualified immunity.

Plaintiffs allege that Chief Denko violated several departmental policies and was not reprimanded in a similar manner to the reprimand received by Plaintiffs. Specifically, Plaintiffs allege that Chief Denko violated departmental policy by being in uniform and working traffic stops with his arm in a sling, by initiating pursuit in an unmarked vehicle and by violating a City ordinance when he used a cellular telephone without a hands-free option while driving. Plaintiffs also allege that Chief Denko and Lieutenant Lucero take lunch breaks without notifying dispatch of their physical location in violation of a departmental practice to notify dispatch of one's physical location during breaks. Plaintiffs contend these various violations of departmental policy and practice are similar to the violation for which Plaintiffs were reprimanded, and the fact that Denko has not receive discipline similar to Plaintiffs shows the violation of Plaintiffs' rights to equal protection.

**LEGAL STANDARDS**

The defense of qualified immunity is designed to shield public officials from erroneous suits and liability, and protects all but the plainly incompetent or those who knowingly violate the law. Holland v Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001); Hinton v City of Elwood, Kansas, 997 F.2d 774, 779 (10th Cir. 1993). For this reason, special standards apply to a summary judgment motion raising the defense of qualified immunity. Hinton, 997 F.2d at 779. When a defendant asserts a qualified immunity defense, Plaintiff bears the initial burden of making two showings. Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001); Holland, 268 F.3d at 1185. First, a plaintiff must show that a defendant's alleged actions violated a constitutional or

statutory right.  <u>Medina</u>, 252 F.3d at 1128.  The Court, in determining whether this showing is made, must assess whether the facts, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional or statutory right.  <u>Holland</u>, 268 F.3d at 1185.  If a favorable view of the alleged facts shows the violation of a constitutional or statutory right, the plaintiff must then show that the right was clearly established at the time the allegedly wrongful conduct occurred.  <u>Id.</u> at 1186.  The contours of the right must have been sufficiently clear at the time such that a reasonable official would have understood that his or her conduct was unlawful.  <u>Id.</u>  A constitutional right is clearly established for qualified immunity purposes when there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains.  <u>Camfield v City of Oklahoma City</u>, 248 F.3d 1214, 1228 (10th Cir. 2001).  If a plaintiff makes the required showings, the burden then shifts back to the defendant to make the usual showing required of defendants moving for summary judgment.  <u>Hinton</u>, 997 F.2d at 779.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of showing an absence of a genuine issue of material fact falls upon the moving party.  See <u>Adler v Wal-Mart Store, Inc.</u>, 144 F.3d 664, 670 (10th Cir. 1998).  However, when the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by pointing out to the Court that there is an absence of evidence to support the nonmoving party's case.  <u>Lujan v. National Wildlife</u>

Federation, 497 U.S. 871 (1990); Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Adler, 144 F.3d at 671.

Once the movant has met its Rule 56 burden, the burden then shifts to the non-moving party to establish the existence of a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The nonmoving party must then go beyond the pleadings to set forth specific facts showing that there is a genuine issue of material fact for trial sufficient to support a verdict for the nonmovant. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hardy v. S.F. Phosphates Ltd. Co., 185 F.3d 1076, 1079 (10th Cir. 1999). Factual disputes that are irrelevant or unnecessary will not be counted. Anderson, 477 U.S. at 248. All reasonable factual inferences must be drawn in favor of the nonmoving party. Seamons v Snow, 206 F.3d 1021, 1026 (10th Cir. 2000); Curtis v Oklahoma City Public Sch. Bd. of Ed., 147 F.3d 1200, 1214 (10th Cir. 1998). However, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. Bausman v Interstate Brands Corp., 252 F.3d 1111 (10th cir. 2001). The nonmoving party must present enough evidence to allow a reasonable jury to find for the nonmoving party, and cannot rest upon mere allegations or denials of the pleadings. Orback v. Hewlett-Packard Co., 97 F.3d 429, 432 (10th Cir. 1996) (citing Wilson v. Meeks, 52 F.3d 1547, 1551-52 (10th Cir. 1995).

**DISCUSSION**

The equal protection clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend.

XIV. Thus, States must treat like cases alike, but may treat dissimilar cases accordingly. Tonkovich v. Kansas Board of Regents, 159 F.3d 504, 532 (10th Cir. 1998). There are three recognized types of equal protection claims. Garcia v. State of New Mexico Office of the Treasurer, 959 F.Supp. 1426, 1432 (D.N.M. 1997). First, there are claims that members of a vulnerable group, racial or otherwise, were singled out for unequal treatment. Id. Second, there are claims that challenge laws that allegedly make irrational distinctions. Id. Finally, there are claims, such as Plaintiffs', that allege an unequal application of a statute or government procedure if intentional discrimination is shown. Snowden v. Hughes, 321 U.S. 1 (1944).

In order to make a prima facie showing of unequal application of a statute or government procedure, a plaintiff must show that similarly situated individuals were treated differently and that the action taken regarding the plaintiff was done so in an effort to intentionally or purposefully discriminate against the plaintiff for reasons wholly unrelated to a legitimate government purpose. Buckley Constr., Inc. V. Shawnee Civic & Cultural Dev. Auth., 933 F.2d 853, 859 (10th Cir. 1991); Garcia, 959 F.Supp. at 1432.

Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline. Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997). Courts must compare the relative employment circumstances applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated. Id. at 1404. Comparable employees need not have engaged in the same behavior or violated the same rules in order to be similarly situated, but they must have engaged in conduct of comparable seriousness. McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1261 (10th Cir. 1988); see also Tonkovich, 159 F.3d at 532-33.

I.  PLAINTIFFS HAVE NOT MET THEIR INITIAL BURDEN UNDER THE QUALIFIED IMMUNITY STANDARD OF SHOWING THE VIOLATION OF A CONSTITUTIONAL RIGHT

The facts, taken in the light most favorable to the Plaintiffs, do not show that Defendant Denko's conduct violated Plaintiffs' constitutional or statutory rights.  Plaintiffs have failed to show that any similarly situated employees were treated differently than Plaintiffs.  The only nonconclusory allegations of dissimilar treatment are those regarding Chief Denko, who is not an employee similarly situated to Plaintiffs.  He does not answer to the same supervisor as Plaintiffs.  Additionally, Plaintiffs have not alleged and have not presented any evidence that would give this Court any basis for finding that the employment circumstances of Chief Denko are even remotely comparable to the employment circumstances of Plaintiffs.  Finally, even if the Court found that Chief Denko and Plaintiffs were similarly situated employees within the Santa Fe Police Department, the seriousness of Denko's alleged violations of departmental policies, a departmental practice, and a City Ordinance do not compare to the seriousness of Plaintiffs' violation of a citizen's constitutional rights.  Therefore, Plaintiffs have failed to show a violation of their Fourteenth Amendment equal protection rights because they have failed to show that similarly situated employees were treated differently.

Assuming, arguendo, that Plaintiffs had shown that similarly situated employees were treated differently for similarly serious violations, Plaintiffs failed to show that such action was taken in an effort to intentionally or purposefully discriminate against Plaintiffs for reasons wholly unrelated to a legitimate government purpose.  The only evidence that could tend to show any discriminatory intent or purpose are the alleged statements by Chief Denko at a staff meeting criticizing Officers Rice and Baker's conduct and stating that he would make an example of them.

9

Nothing in these statements shows an intent to discriminate for reasons wholly unrelated to a legitimate governmental purpose. Therefore, Plaintiffs have failed to meet their burden under the qualified immunity analysis of showing the violation of a constitutional right.

II. PLAINTIFFS HAVE FAILED TO SHOW THAT THE CONSTITUTIONAL RIGHT ALLEGEDLY VIOLATED BY DEFENDANT DENKO WAS CLEARLY ESTABLISHED.

Even if Plaintiffs had shown that Chief Denko violated their Fourteenth Amendment right to equal protection under the laws, Plaintiffs have failed to show that the right was clearly established at the time such that a reasonable official in Chief Denko's position would have understood that his conduct was unlawful. Plaintiffs offered no Supreme Court or Tenth Circuit decisions to support a finding that the right was clearly established nor did they offer any clearly established weight of authority from other courts. In fact, Plaintiffs did not address the clearly established prong of the qualified immunity standard as regards their allegations against Chief Denko. Instead, Plaintiffs stated that the law regarding the Fourth Amendment was clearly established at the time Officers Rice and Baker stopped Ms. Warren such that Plaintiffs did not violate Ms. Warren's constitutional rights. The law that Plaintiffs are obligated to address is the law regarding Chief Denko's behavior toward Plaintiffs, not the law regarding Plaintiffs' behavior toward Ms. Warren. Plaintiffs have failed to meet their burden of showing that, at the time of Chief Denko's conduct that allegedly violated Plaintiffs' Fourteenth Amendment equal protection rights, the contours of those rights were sufficiently well-defined that Chief Denko would have known his conduct amounted to a violation of those rights.

III. DEFENDANT CITY OF SANTA FE IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF ITS LIABILITY FOR DEFENDANT DENKO'S ALLEGED VIOLATION OF PLAINTIFFS' EQUAL PROTECTION RIGHTS

A municipality cannot be held liable under Section 1983 for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights. <u>Trigalet v. City of Tulsa</u>, 239 F.3d 1150, 1154 (10th Cir.2001); see also <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986). Having found that Defendant Denko's conduct toward Plaintiffs did not violate their Fourteenth Amendment equal protection rights, the City of Santa Fe is also entitled to summary judgment with regard to its liability for this alleged conduct.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant John Denko's Motion for Summary Judgment No. I: Plaintiffs' Equal Protection Claim [Docket No. 96] is hereby GRANTED.

IT IS FURTHER ORDERED that John Denko's Motion to Dismiss Plaintiffs' Equal Protection Claim [Docket No. 90] is DENIED as moot.

IT IS FINALLY ORDERED that Defendant City of Santa Fe is hereby GRANTED summary judgment *sua sponte* regarding any liability for the alleged violation of Plaintiffs' Fourteenth Amendment equal protection rights.

_____
UNITED STATES DISTRICT JUDGE